1

2

3

4

5

6
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
7
AT SEATTLE

8
_____
)
9
ZURICH AMERICAN INSURANCE,            )
COMPANY,                              )                No. C03-2982L
10                                     )
Plaintiff,        )
11                                     )        ORDER GRANTING PLAINTIFF'S
v.                  )        MOTION FOR SUMMARY
12                                     )        JUDGMENT REGARDING LIABILITY
EMPLOYERS INSURANCE COMPANY            )
OF WAUSAU,                            )
13                                     )
Defendant.        )
14 _____)

15

16          This matter comes before the Court on "Plaintiff's Motion for Partial Summary

17  Judgment" (Dkt. # 18) and "Defendant's Motion for Summary Judgment and Supporting

18  Memorandum" (Dkt. # 26).  The parties seek contrary findings regarding Wausau's duty to

19  cover losses incurred by the insured, Jorgensen Forge Corporation, when its 5000-ton forging

20  press seized on July 1, 2002.  Zurich, which issued a policy for the period June 30, 2002, to June

21  30, 2003, has paid Jorgensen's repair costs, loss of business income, and expenses in the amount

22  of $8,850,000 and seeks to hold Wausau, the insurer on the risk through June 30, 2002, liable

23  for some unspecified portion of those costs.  These motions involve only the issue of coverage

24  under the Wausau policy: the amount of contribution to which Zurich is entitled, if any, is not at

25  issue here.

26          Summary judgment is appropriate when, viewing the facts in the light most

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT REGARDING LIABILITY

favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied his burden, he is entitled to summary judgment if the non-moving party fails to designate, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," however, and factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor."  Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

Many of the relevant facts are not in dispute.  The day after Wausau's policy terminated, Jorgensen's forging press suffered an abrupt seizure during operation as a result of a previously undiscovered crack in the lower crosshead of the press.  Based on the unrebutted testimony of Zurich's expert, the crack had been progressing through the lower crosshead for over a year before the July 1, 2002, failure.  Zurich has also submitted evidence, in the form of declarations from Jorgensen employees and its expert's report, that the crack had caused the press to move out of alignment during the policy period and that this misalignment caused damage to various components of the press which required frequent adjustments, repairs, and replacement.  Wausau offers Jorgensen's maintenance logs[1] in support of its contention that no damage necessitating repairs occurred during its policy period, but admitted at oral argument that the crack in the lower crosshead caused maintenance, guide system, and bearing problems in

---

[1] Plaintiff's objections to the admissibility of Jorgensen's maintenance logs are without merit or go more to the persuasiveness of the evidence than its admissibility.  The logs have been considered in ruling on the parties' motions for summary judgment.

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT REGARDING LIABILITY -2-

the year preceding July 1, 2002.[2]  Thus, it is uncontested that the crack in the lower crosshead caused a misalignment which hindered or otherwise interfered with the functioning of the press during defendant's policy period and that the problems associated with the crack necessitated repair prior to July 1, 2002.  It is also undisputed that Jorgensen was unaware of the crack in the lower crosshead of the press until the resulting misalignment became extreme enough to produce high friction in the moving columns above the lower crosshead, thereby causing the press to seize on July 1, 2002.  After the seizure, Jorgensen promptly tendered insurance coverage claims to Wausau and Zurich.  Zurich accepted coverage and indemnified the insured for its losses. Wausau denied coverage, contending that there was no "accident" during its policy period.

The equipment breakdown endorsement of Wausau's policy provides coverage if "an accident to an object causes . . . [l]oss to property . . ." owned by the insured.  Decl. of Scott C. Wakefield (Dkt. # 27), Ex. A at 11.  The parties agree that Jorgensen's forging press is an "object" owned by the insured for purposes of this provision.  An "accident" is defined by the policy as "a sudden and accidental breakdown of an object or a part of the object.  At the time the breakdown occurs, it must manifest itself by physical damage to the object that necessitates repair or replacement."  Decl. of Scott C. Wakefield (Dkt. # 27), Ex. A at 30.  The parties disagree regarding the interpretation of the term "manifest" as used in the policy.  Zurich argues that coverage was triggered because the crack was showing itself, *i.e.*, manifesting itself, during the Wausau policy period through operational and maintenance problems.  Wausau, on the other hand, argues that the crack had not manifested itself during the policy period because Jorgensen was unaware of its existence until the July 1, 2002, seizure.

Having reviewed the memoranda, declarations, and exhibits submitted by the

---

[2]  Defendant's counsel acknowledged, "Yes, there were problems with the press that occurred in 2001 and 2002 before July 1, 2002.  There is no question about that.  We agree on that.  The problem is those issues of maintenance, the guide system requiring adjustment, the bearings required repacking, there's no claim for those.  The claim in this case is for the seizure that occurred at 4 p.m. on July 1, 2002."  Uncertified Tr. of Oral Argument held on July 5, 2005.

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT REGARDING LIABILITY -3-

parties[3] and having heard the arguments of counsel, the Court finds that Zurich has the better of the policy interpretation argument.  Under Washington law:

> [I]nsurance policies are construed as contracts.  An insurance policy is construed as a whole, with the policy being given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.  If the language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists.  If the clause is ambiguous, however, extrinsic evidence of intent of the parties may be relied upon to resolve the ambiguity.  Any ambiguities remaining after examining applicable extrinsic evidence are resolved against the drafter-insurer and in favor of the insured.[4]  A clause is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.

Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 665-66 (2000) (internal quotations and citations omitted).

Although the coverage provision of Wausau's equipment breakdown endorsement

---

[3] The Court has considered Exhibit L to the Declaration of Scott C. Wakefield (Dkt. # 27) because the First Notice of Loss is properly characterized as a business record under Sana v. Hawaiian Cruise Lines, Ltd., 181 F.3d 1041, 1045-47 (9th Cir. 1999).  Exhibits I, J, and K to Dkt. # 27 and Exhibit C to Dkt. # 34 have not, however, been considered.  The transcripts of Mr. Kent's interviews with various Jorgensen employees contain several layers of hearsay, at least one of which (the fact that the transcripts themselves are unsworn, out-of-court statements) is not subject to an exception to the hearsay rule.  This exclusionary ruling is insignificant, however, because Zurich has admitted that "no personnel from Jorgensen Forge discovered the crack in the lower crosshead, which gives rise to this claim, prior to July 1, 2002 . . . ."  Decl. of Scott C. Wakefield (Dkt. # 27), Ex. H at 124.

Defendant's incorporation by reference of a separately filed motion to strike portions of the declaration of Mr. Kent does not comply with the local civil rules (see LR 7(g)) and has not been considered in connection with these motions except as stated infra note 4.

The declaration of Fred G. Infield, which was submitted with "Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment," Dkt. # 33, has not been considered in connection with these dispositive motions because Mr. Infield's opinions and report were not timely disclosed.

[4] Although authority on this point is sparse, when a coverage dispute arises between two insurers, the party claiming coverage stands in the place of the insured.  In order to avoid the very real risk of inconsistent interpretations should the rule be otherwise, Zurich is entitled to a favorable interpretation of any ambiguities in the policy.  See Farmers Home Mut. Ins. Co. v. Ins. Co. of N. Am., 20 Wn. App. 815, 820 (1978).

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT REGARDING LIABILITY -4-

is very broad (Wausau agrees to "pay if an accident to an object causes . . . [l]oss to property" Jorgensen owns), the definition of accident limits the scope of coverage somewhat.  First, the accident has to involve a breakdown of an object or part of an object owned by Jorgensen.  The press and its component parts (such as the lower crosshead) are insured objects under the policy and defendant does not seriously dispute the fact that both the July 1, 2002, seizure and the pre-July 1, 2002, crack in the lower crosshead constitute a breakdown of the part.  The term breakdown is not defined in the policy and generally encompasses any defect in or failure of the equipment that causes it to cease functioning or to function improperly.  Having admitted that the crack in the lower crosshead existed and caused the press to malfunction during Wausau's policy period, the breakdown element is satisfied.[5]

Second, the breakdown has to be sudden and accidental.  Under Washington law, "sudden and accidental" means unforeseen, unexpected, and unintended.  See Anderson & Middleton Lumber Co. v. Lumbermen's Mutual Casualty Co., 53 Wn.2d 404, 408-09 (1959); Queen City Farms, Inc. v. Central Nat. Ins. Co. of Omaha, 64 Wn. App. 838, 884 (1992).  All parties acknowledge that Jorgensen did not expect, intend, or foresee the existence of a crack in the lower crosshead until the forge seized on July 1, 2002.

Finally, the breakdown of the object or part thereof must manifest itself in a particular way, namely through physical damage to the object that necessitates repair or replacement.  The language of this policy is different from that discussed in most of the cases cited by the parties.  Unlike the California "manifestation rule" cases (such as Prudential-LMI Commercial Ins. v. Superior Court, 798 P.2d 1230 (Cal. 1990)), this first-party policy does not

---

[5] Because defendant's pending motion in limine directly challenges the admissibility of Mr. Kent's opinion that, had the crack in the lower crosshead been discovered prior to July 1, 2002, Jorgensen would have taken the press out of service immediately, the Court has not relied upon that opinion for purposes of determining whether there was or was not a breakdown during Wausau's policy period.

To the extent that defendant argues that Zurich should be precluded from taking inconsistent positions with regards to the meaning of "breakdown," it has made no effort to show that Zurich's conduct triggers the doctrine of judicial estoppel under Ninth Circuit law.

simply cover "all risks" not otherwise excluded.  Nor does the policy expressly require that the loss commence, be discovered, or result in a claim during the policy period.  The key to the coverage issue before the Court is the language of this particular policy and the rules of interpretation of this state: arguments based on the interpretation of dissimilar language is not persuasive.

Defendant insists that the manifestation provision in its policy requires that Jorgensen discover the crack during Wausau's policy period in order to trigger coverage and that, absent such discovery, the Court should find that the crack had not manifested itself until after Wausau's policy had terminated.  Defendant's interpretation of the policy adds terms to the definition of accident and improperly narrows the common meaning of "manifest."  Wausau repeatedly argues that Zurich's claim for contribution fails because "the cracks in the lower crosshead that caused the seizure of the forging press did not manifest themselves <u>to Jorgensen, the insured</u>, during Wausau's Policy period . . . ."  Opposition (Dkt. # 32) at 1-2 (emphasis added).  The policy, however, simply requires that the breakdown manifest itself:  it does not say to whom it must manifest and does not require that the insured understand the connection between the breakdown (the crack of the lower crosshead) and the evidence of the breakdown (the alleged misalignment of the press components causing excessive wear and requiring frequent adjustments/replacements).  In addition, the term manifest, which is used as a verb in the policy, is not the functional equivalent of discovered.  "To manifest" means "to show plainly:  make palpably evident or certain by showing or displaying."  Webster's Third New International Dictionary at 1375 (1986).  The term focuses on the outward signs of an event or occurrence, without reference to the conclusions a particular observer draws from those signs.  Diseases, hidden property damage, and/or social trends regularly "manifest" themselves through symptoms, physical indications, and incremental changes, the import of which an observer may

or may not understand.[6]  In common usage, when something manifests, it exhibits observable signs of an underlying event or causative factor: the term does not necessarily imply and, the Court finds, does not require, understanding or comprehension regarding the causative connections on the part of the observer.  Had Wausau intended to provide coverage only where the insured discovered the property damage during the policy period, it could easily have included language to that effect.  Instead, it used the term "manifest" which has a number of connotations in ordinary speech and does not necessarily require discovery, comprehension, or understanding on the part of the insured.  Under the contract interpretation rules of this state, the ambiguity in the policy terms will be interpreted against Wausau and in favor of Zurich.

In light of defendant's admission that the crack in the lower crosshead caused the press to shift and resulted in the need to replace bolts, repack the hydraulic systems, and adjust the press during Wausau's policy period, the breakdown necessitated repair, thereby satisfying all of the elements of the coverage provision regardless of whether Jorgensen understood the root cause of its alignment problems.[7]  Because defendant's policy, as interpreted by this Court, provides coverage for the same property, for the same interest, and against the same risk as that paid by Zurich, the necessary prerequisites for equitable contribution are satisfied.  See Kirkland v. Ohio Cas. Ins. Co., 18 Wn. App. 539, 545-46 (1977).  The amount of contribution will be determined at trial.

---

[6]  For example, stomach cancer may manifest itself through subjective symptoms such as nausea, lack of appetite, and listlessness.  In common parlance, the disease has manifested itself even if the patient is unable to put the clues together in a way that allows her to identify the underlying cause of the constellation of symptoms.

[7]  See Litho Color, Inc. v. Pacific Employers Ins. Co., 98 Wn. App. 286, 290 (1999) (although insured could not identify any specific damage to the covered equipment, evidence that the machines did not operate as well and required maintenance after a certain point in time satisfied the policy's "physical damage necessitating repair or replacement" requirement).

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT REGARDING LIABILITY -7-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

For all of the foregoing reasons, the Court finds that the manifestation requirement of the Wausau policy does not necessarily imply and, in the circumstances presented here, does not require, that the insured understand or comprehend the root cause of the observable symptoms of the breakdown.  The manifestation of physical damage to the press that necessitated repair or replacement during the policy period triggered the Wausau policy.  Zurich, which paid the entirety of Jorgensen's claim, is therefore entitled to equitable contribution. Plaintiff's motion for summary judgment regarding liability is GRANTED.  Defendant's motion for summary judgment is DENIED.

DATED this 25th day of July, 2005.

*MW S Lasnik*

Robert S. Lasnik
United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT REGARDING LIABILITY -8-